All right, we'll call the case of PG Publishing versus Newspaper Guild of Pittsburgh. Mr. Murphy. Thank you, Your Honor. I'm Terrence Murphy representing the Pittsburgh Post Gazette. I respectfully request to reserve three minutes of my time. Granted. This is the Post Gazette's appeal from the District Court's dismissal of a complaint seeking to vacate a labor arbitration award and the District Court's enforcement of that award. The first or initial issue is whether the Post Gazette's complaint was timely or is used the word complaint, and the initial pleading was styled complaint. But I'm somewhat confused. Judge McKee would tell you that that's not an unusual event. But in any case, what we have is a complaint that invokes both Section 301 of the LMRA and Section 10 of the FAA. Now, the 301 action would, as I understand it, in the ordinary case, call for a complaint. But not necessarily Section 10. And in fact, motions are the ordinary way of bringing to court for some relief of vacating an award. So, this seems to be an unusual action, at least in my experience, by virtue of the combination of the two statutory forms of relief that are sought. And the reason I raise it is not simply to be pedantic, but it does have some because a complaint that would be subject to the rules of civil procedure then open up all of the entire panoply of procedural rights, if you will. Not so with the motion, which suggests a much more applies to the district court's review of a motion to vacate under the FAA. I would think that if it is purely a question of law, I would think it's de novo review. You filed the complaint. Why invoke both the FAA and the LMRA? What does one do that the other does not? What's the difference between the two? The substantive difference, I think, both permit a public policy argument to undo or vacate an manifest disregard of law, which does not exist under the LMRA. All right. You indicated that you wanted to launch into the timeliness issue, I believe. I can. The the district court held that the complaint, the claim claims were not timely for two reasons. Number one, that the Federal Arbitration Act doesn't apply and thus its statute of limitations doesn't apply. And second, that the Post-Gazette did not meet the applicable 30 day statute of limitations that applies based on borrowed state law. Is finality a question of law or is it a question of fact? Which question, Your Honor? Finality. Well, I mean, I'm not sure. I think the issue of when the statute of limitations begins to run is a question of law. But here on the FAA, I think the district court was simply incorrect. If it's a question of law, the the intent of the arbitrator then would not be a factor. Would I be correct in that? On the statute of limitations? On the finality of the arbitration award, which would start the clock running, right? Yes, I agree. That is a question of law when the arbitration award was final. What about the FAA's exclusion provisions? That's been held to apply only to workers who are directly in the channels of interstate commerce, such as truck drivers. And your position is that your folks don't, aren't? No, these are reporters and editorial personnel at a newspaper. Right. So what does that do to your statute of limitations? That means that the exclusion doesn't apply, that the FAA does apply. You have 90 days. Pardon me? So you have 90 days. Three months, yes. Yes. If we agree with you that they're not engaged in interstate commerce, right? Not engaged directly in interstate. Correctly. Such as seamen, bus drivers, folks of that ilk, so to speak. Correct. Then you win on the statute of limitations argument. I think so. There is a non-precedential decision from this court from February 2020. Prospect CCMC versus Crozier Chester Nurses Association. That is a mouthful in which a panel of this court in a non-precedential case addressed the exact same issue presented here, which was whether an employer seeking to vacate a labor arbitration award could proceed under the FAA and get the benefit of the three month statute of limitations under the FAA. And Judge Hardiman wrote for the panel there that they could. The district court in this case didn't really do this analysis, did it? Well, the district court adopted the report and recommendation of the magistrate judge. And the magistrate judge cited that an older case from this circuit involving likely construction. But I respectfully submit that that case does not stand for which it was cited by the magistrate judge and the district judge. It does. That case involved the contention by a party that the FAA statute of limitations ought to apply to an M.L.R.A. L.M.R. Excuse me, 301 action. It didn't address whether or not whether an FAA action claim was available to vacate. What it held was we're not going to. We think the decision in the service employees case saying that the 30 day statute applies in a 301 case remains the correct decision. We confirm that. But if not, that case, despite what the magistrate judge in the district court said, did not address the availability in this circuit of an FAA action to vacate a labor arbitration. Or. With respect to the application of the L.M.R.A. 30 day statute, the district court held that the action was untimely because it was not filed within 30 days of the email award on December 30 of 2019. Post because that's contentious. That's incorrect. Under the complete arbitration rule, judicial review of a labor arbitration award. Well, had not the didn't the arbitrator in that December 1919 2019 award really conclude his what would be his last substantive task. That is making an award. Wasn't that accomplished really with reasoning to follow? I respectfully disagree with that, your honor, for these reasons. Number one. The complete arbitration rule says an arbitration is complete with all the substantive tasks are complete. To me, providing the written opinion is, in fact, a substantive task. What arbitrated on that here, though, why, why he wasn't that really ministerial. I mean, usually we would think of providing one opinion as being a substantive task. But here, everything that you needed to know to bring your suit was contained in the December 30 email, which everybody thought was final at the time. Your complaint. I think there's only one paragraph. Your complaint is the only paragraph that relies upon anything other than what is in the December 30 email. I think even paragraph 29 relies partially on December 30 emails. Everything you needed to know to bring your action was there in place as of December 30th. And we can have cases that say that the arbitrator doesn't he doesn't even have to provide a reason for the award. So if that's the case, why wasn't the December 30th tantamount to the arbitrator's court opinion? Close quote. We would contend it was not complete for at least two reasons. Number one, that email award in December 30 said nothing about the Post Gazette's contention made at the arbitration that to side with the union would cause the Post Gazette to violate LMRA Section 302C. That point was addressed in the written opinion, unaddressed in the email award. Wasn't it important to both sides to have a determination before the end of the year, and therefore before the end of the month of December? I think it was certainly. Wasn't that subject to negotiation in fact between the parties? Or discussion so that the arbitrator knew that he was going to have to make an award. Finally not, but he was going to have to make an award before December 31st. I would say it was very important to the fund because January 1 was the date on which their next increase in contributions would go into effect. And in the dialogue with arbitrator Nadelbeck between the parties about how and when the briefing would occur. I know it was important to the fund because that certainly is going to result in whether or not the beneficiaries receive a certain amount of coverage. But it had no importance to PG? Well, I think the true importance was to the fund because the union in its email to the arbitrator said, I'm paraphrasing because I do not have it immediately in front of me. Words to the effect arbitrator Nadelbeck, we think the fund needs an answer by January 1. So arbitrator Nadelbeck then sends back an email says, OK, I think I can get a written award in short form to you by December 31 and more to come. All right. Put aside the question of to whom it was of greater importance. You were diverse, correct? To the entry of a determination, if you will, on this question prior to the end of the year. No, but I would say the Post-Gazette's position was fine. The arbitrator is telling us he's going to give us this award in two parts. An early award and then a full written opinion and award to follow. And from our point of view, the award wasn't complete until we got both parts, not just the first one. But it was final. The email said it's final and binding. So what did you not know then to perfect your. We didn't know what his position was on 302 C5 because it was not in the email award. To see five. Excuse me. Here to see five. Specifically, what are you referring to? The Post-Gazette had contended at the arbitration that you require it to provide increased contributions to the teamsters welfare fund. After 2017 would require it to violate Section 302 of the Labor Management Relations Act, which says that contributions to a joint fund are not permitted unless there is a written agreement specifying the detailed basis for those contributions. And the argument was there's nothing in the agreement about any contributions after 2017. Well, the problem is, though, we have cases that say elapsed CBA can be grounds to satisfy that requirement. True. But this was not paragraph two does say that the you violated the collective bargaining agreement by not maintaining the payments is set forth in Article 20. So why wouldn't that be sufficient for your purposes? Paragraph two, because this was not elapsed CBA. It continued based on an evergreen clause. So that's another question. I don't understand. The argument here is that after I guess 2017, when he got in 2018, there was no provision for the continuance of the 5 percent increase in benefits paid to the employees health fund. Why wouldn't the evergreen clause be sufficient to carry that provision after the 2017 lapse into 2018? I don't understand that. Well, the Post Gazette, in fact, continued in 2018, 2018, 2019, to contribute at exactly the same rate that it had contributed at in 2017, precisely because with an evergreen contract, that provision for that amount was still in place. And under the duty of the same amount, did you understand it? I could be wrong here. You know, this could be a bit of an idea. I thought the understanding in CBA was that whatever amount was being paid in the given year, that would be increased by 5 percent in subsequent years. Now, are you saying that after the CBA elapsed, you continued to pay the the base amount that had been paid in 2017, but not the 5 percent increase? We we continued to pay the 2017 amount, but declined to pay the the increases in that amount announced by the fund, because under the duty to bargain, we had an obligation not to make unilateral changes. But we felt that that's why I'm lost. Why wouldn't the evergreen clause be sufficient? You're not making unilateral changes. The evergreen clause, it seems to me, would require you to continue to pay the 5 percent after the lapse of the CBA, which we did. It's really just that you paid the base, but not the 5 percent increase. We we continued to pay the amount specified for 2017 and 2018 and 2019 and into 2020, including a 5 percent increase or just the base amount. We declined to pay any additional increases beyond the 2017 amount. The same amount into the beginning of 2020 that you had paid in 2019. Correct. And that's my concern. Why wouldn't the evergreen clause require you to increase that amount each year thereafter by 5 percent? Because there was no language in the agreement addressing any increase in fund contributions after 2017. 302 of the Labor Management Relations Act requires a written agreement detailing the basis for contributions. We had a detailed basis up through 2017, but for increases above that, there was no detailed written agreement. And our argument was before the arbitrator, if you bring up the fund, it's right to take increases, which we never negotiated language into in the labor agreement. If I'm understanding, you're required to violate 302. If I'm understanding your position and your answers in response to Judge McKee, it really goes to what you see the evergreen clause requiring of you. And that is what you considered it to require of you was to continue to pay an amount, that amount being the same amount that had been paid in the year 2019, not an obligation to pay a percentage increase as you had been required to pay a percentage increase for a prior year. Have I put it correctly? You are correct. The National Labor Relations Board in its decision addressed this directly. It said, I'm quoting from the NLRB decision because it addressed the very same point. It said the agreement established a baseline contribution for 2016 and required respondent to pay contribution increases for 2016 and 2017 only. Well, in moving to the reference to the NLRB decision, maybe this is a good point, especially given the amount of time that has transpired for you to move into the merits and to quickly address them, if you would, please. Well, the first merits issue is the 302 issue. It's simply stated, and I've alluded to it, but maybe not stated as directly as I might. The 302 says specifically that contributions to a jointly trusted fund must be based on a written agreement specifying the detailed basis for those contributions. The agreement had a detailed basis for contributions through 2017 and nothing after that. So we have the unusual situation where the Evergreen Clause continues the terms of the contract, but the terms of the contract have nothing about contributions after 2017. So when the fund announced increased contribution rates beyond what was negotiated in the labor agreement for 2017, the Post-Cassette said we're not paying them. There's no authorization for those increases. And I understand your position on that. Perhaps I was vague. When I was referring to moving into the merits, what I was really referring to was your argument about the conflict between the NLRB decision and the arbitrator's decision because you have made much of that, at least in your briefing. It really sounded to me in the nature of kind of a collateral estoppel issue, though I don't think you ever explicitly invoked collateral estoppel. In fact, to the contrary, I think there was some reference to latches along the way, but you can elaborate on that. Right. Our argument was simply that where an arbitration decision and an NLRB decision collide and they address the same issue, the NLRB decision takes precedence. And that draw the origin of that doctrine is from a 1965 Supreme Court case, Kerry versus Westinghouse, which I. We do not cite it's the origination of that doctrine. It is cited in the cases that are are cited in our brief. And in simple terms here, the NLRB decision addressed exactly the same issue that the arbitrator addressed, not 302 C. And the NLRB said Post Gazette has abrogated no contractual obligation in refusing to pay increases in fund contributions after 2017. Because there is no Kerry based upon the superior expertise of the NLRB. Pardon me. Our wasn't the court's decision in Kerry based upon reliance on the NLRB's superior expertise in this labor area generally. In part, I think one can look at Kerry Westinghouse. The Westinghouse was now quite an old case as saying that. We sound like a labor historian here, but it followed just two years after the Steelworkers Trilogy. The famous steelworker cases at a time when the Supreme Court was still sorting out issues of jurisdiction between the various forums that could adjudicate labor disputes. I think Kerry versus Westinghouse, in part, stands for the proposition that even if there is concurrent jurisdiction between the NLRB and what might be placed before an arbitrator, we are not going to preclude the arbitral forum from exercising its contractual obligation. However, if there comes a time or a case when the arbitral forum and the NLRB address exactly the same issue, the NLRB decision should take precedence. In Sheet Metalworkers, we interpreted that language in Kerry to arise from the NLRB's specific expertise in certain areas. Particularly, I think there was work assignments disputes. Yes. But we said all along, and the Supreme Court has said, when it comes to purely contractual interpretation, and this is consistent with the overall Chevron doctrine, purely contractual matters, the NLRB has no particular expertise in. Those are something that the arbitrator and the court have expertise in, not the NLRB. But theoretically, that is at least partially true. But the difference is, in this case, the finding that the Post Gazette had committed no unfair labor practice was premised precisely on the board's finding that it breached no contractual obligation. But that's it. It was based upon the CBA. It was based upon the board's interpretation of the collective bargaining agreement. It wasn't based upon anything the NLRB has particular expertise in. But, so here we have the board and an arbitrator ruling on the same issue, and Kerry v. Westinghouse and the subsequent cases from Kerry all say that where a board decision and an arbitral decision are in direct conflict, the board decision takes precedence. In certain areas, and that's what we said in Sheet Metalworkers when we looked at Kerry. Well, the language in Kerry v. Westinghouse is not qualified that way. All right. Let me ask if Judge Restrepo has any questions. If not, I think we're well beyond the time, but that's our usual practice. We'll have you back. I'm going to let Mr. Murphy thank Judge Pass. Thank you, Your Honor. Good morning, Your Honor. My name is Joseph J. Pass, and I represent the Newspaper Guild of Pittsburgh in this case. I'd make a personal comment to Judge Smith. Coming into your retirement, I think you're not old enough to retire. I got you by 10 years, but maybe people think I should retire, too. He's not retiring. He's taking senior status. He'll still be with us, unless I'm mistaken. He'll still be with us. Unless Judge McKee locks me out of the building, my intention is to continue to report to work. Mr. Pass, for my benefit, could you start where we just left off? Pardon me? For my benefit, could you start where we just left off? Was it the same issue, the two competing entities? No, absolutely not, and if you look at the NLRB's decision, they did not base it upon the contract. In fact, they specifically said, and I raised it in our brief, they didn't even consider the past practice issue, which is part of the contractual issue. As our cases in this circuit have said time and again, past practice is a part of the arbitrator's parameter in deciding. And the past practice was, as testified not only by the union, but by the employer's own human relations manager, who had been there for 20 or 30 years, that when the contract had expired, regardless of what the language said, the employer always paid sufficient funds to maintain the level of benefits that are set forth in the contract. And that goes to the 302 argument. In the back of the contract, the agreement says, the employer shall provide, and it lists that in Exhibit B, the benefits that the employees were entitled to. And if you didn't pay the increase in the premium, you didn't get the benefits. And the company's own human relations manager testified, that's what we always did. That wasn't even before the NLRB. The NLRB ruled on a case dealing with, as the magistrate judge points out, I'm sorry, as the board points out, the ALJ did not address it the way they thought he should have addressed it. They didn't even get into the, although they mentioned contractual, there's no question they mentioned contractual, but they're not the sole judge of the contractual issues. And Lytton has said, as the Chicago Tribune case in the Seventh Circuit, as Judge Posner has indicated, it's the arbitrator or the court that has the better knowledge of how to interpret a contract. Now, if the board did not consider past practice, that's before the arbitrator. For example, the board has concurrent jurisdiction if someone is fired because they allege they had engaged in union activity. And it goes before the board. And the board finds, no, you weren't fired because of union activity. If that contract has a just cause provision, you can go to arbitration. And the arbitrator may find, whatever facts there were, he was discharged improperly because it wasn't just cause. The cases say that. All of our cases say that. There's not a single case around that I know of that does not show there is a distinction between what an arbitrator considers and what the labor board considers. So as the person, I don't know the answer to this question. Before the NLRB, would past practices even be admissible? I'm not sure to what extent laws, the formal rules of evidence are followed there, but would it be admissible? It would be just what we have. The former manager testifying, the union testifying, that the benefit levels have never been decreased after the contract date term. It would be admissible before the NLRB? Oh, absolutely. Sure. In fact, if you look at the NLRB, they even put a footnote in there. I think it's footnote six, I referenced it. We did not consider the past practice issue in this case, specifically said that because the ALJ didn't consider that either. The NLRB provides a, the general counsel determines how the case is provided. Frankly, if you read the ALJ's decision, I had suggested that the general counsel pursue the case along the lines that I was suggesting, which included that past practices, but the general counsel decided otherwise. And the court notes that. And if you look at the judge's opinion, Judge Horan's opinion, or the magistrate's opinion, she specifically points out that there is a distinction of how the ALJ and the board viewed it versus the arbitrator. The other question I think was brought up. Is this a question of fact or law? This was a 12-B-1 motion for a motion to dismiss. And Judge Horan points out, you don't, the finding of fact that the judge made that there was a final and binding award is not, is not reviewable unless it is a manifest abuse of discretion. There's no evidence to prove that. Now, how could anyone in their right mind, frankly, say that there was not a final award, and the parties didn't agree to have it when it was in black and white, that everyone was going to have a final award by the end of December? Not, I mean, words mean something, and lawyers' words mean something. And when you say, I need to have this award because I want to make sure that we have the money paid, maintain those benefits, and the arbitrator says, I can get you a final award, which is titled final and binding award, by the end of the year, and both parties said, that works for us, that's a final and binding award. Opinions aren't necessary. The trilogy cases of the U.S. Supreme Court say the arbitrator need give no reason. Sun Oil, decided by this circuit, said the same thing. The arbitrator need give no reason. But here the arbitrator laid out the exact award, and Judge McGee pointed out, aside from paragraph 29 of their complaint, everything else was based on the content of the final award given on December 30th, 2019. Now, even if you go to the question of whether or not they were saying they were entitled to these benefits, that was for the arbitrator to decide, and we already know the rule with regards to the manifest disregard of an arbitrator's award is one of the more psychosanct things that we have had in labor relations, and this arbitrator's award certainly stands any test that it was, it drew its essence from the agreement, because all he said was the past practice of the parties required the employer to pay, the schedule of benefits needed to have additional money in order to maintain those benefits. That's what the essence of the award is. So as far as we see it, there's no reason at all to address these issues. I think that the plaintiff's case really fails at the beginning. It did not bring the award, did not bring the complaint to overturn the award within the 30-day requirement, and this court, as late as I think it was 2008 in the chemical case, specifically said cases with regards to the overturning of an arbitration award must be brought within 30 days, and that's exactly what this is. No matter how you style it, it was an effort by the employer to overturn an arbitrator's award, and the statute specifically provides it must be within 30 days, and as both the magistrate judge and the district judge noted, because she adopted that opinion, is very simple, that I think in her kind of paraphrase her words, sophisticated counsel should know when it's time to follow, to understand the arbitration is expeditious, it should be expeditious, and the resolution of any disputes must be expeditious. What do we make of the FAA exclusion argument? The FAA has nothing to do with this. It's not an FAA case. It really isn't. The FAA has no bearing on, if you look at our case law, look at double chemical that specifically says cases under NLRA 301 have to be decided pursuant to the 30 day statute of limitations set forth in Pennsylvania. The FAA, if you look at the four standards in the FAA, they don't even meet those standards. It has to be a manifest use of discretion, corruption by the arbitrator, denial of a fair hearing, and there's a fourth one. But none of these are even remotely, if you get to the four criteria, and I think it was Judge Conte in a district court in Pittsburgh wrote an opinion once that outlined exactly those four points. And I don't remember the name of it. It's probably in our brief. But in any event, none of those come close to what happened here. OK. Anything further, Judge McKee? Nothing. Thank you. Thank you very much. Thank you. I'm sorry. I do want to say what I forgot to mention. Of all the cases they cited with regards to the NLRB superiority, every single one had to do with the selection of a representation, a representation case. In other words, one union was a 10K hearing in the one with 10K hearings or when there are two unions fighting for the same work. Others were when another union was petitioning the court. I'm sorry, petitioning for representation at the NLRB. But not a single one, with the exception of the district court in Hawaii, which was decided long before Lytton in the Supreme Court, specifically provided arbitrators are the sole judge of what contractual languages. Thank you. We'll try again. Thank you. Briefly. Leaving aside for a moment, the 30 day issue into the LMRA, if the FAA 90 day statute does apply, and I believe it does, it seems to me the statute of limitations issues here to some degree disappear because the complaints timely under the FAA. In the same arguments, public policy and the like are available under the FAA. Two, I disagree with the statement last made. There are at least two cases cited in our brief that are not representation cases on the issue of NLRB precedents over arbitration. Award one, I cannot remember its name. It's from the District of Hawaii. And the other is the Bavona case. I think either the Southern District or the Eastern District of New York both involved unfair labor practice issues, not representation issues where there was conflict between the arbitral decision and the NLRB decision. Third, briefly, I want to just add this on the 302 argument. The issue there is can one find a written agreement specifying the detailed basis for contributions over and above the 2017 level? They're not in the agreement. Here's what the NLRB said about the reference to the summary of benefits at the end of the agreement, the same thing that the arbitrator relied on. Referring to the ALJ below, the judge attempted to fortify his interpretation by citing the summary of health care insurance benefits attached to each agreement as proof of respondents' commitment to maintain their benefits through future contribution increases. These summaries provided details of the insurance coverage, including deductibles, copays, and out-of-pocket maximums to be offered by a third-party insurer at a price to be set by it. However, the summaries in no way address the level of respondents' present or future contributions. Further, arbitrator Nadelbach relies on past practice. And just to be clear, past practice cannot satisfy the Section 302 requirement of a written agreement. In simplest terms, past practice isn't a writing at all, much less a written agreement. So we see no way that this award is not contrary from public policy sense to Section 302. What do you say to your colleagues' argument that the Hawaii case you're relying upon, specific electrical contractors, was decided before Litton, and therefore it's not very helpful to us? I think that's a different issue. Litton is, in my view, a case, and I think in the view of most practitioners, a case that involves a latter-day iteration of the Nolte brothers' case of the Supreme Court on the issue of when post-expiration grievances are arbitrable. And it sets out guidelines for when certain post-expiration grievances are arbitrable, and that's the primary holding of Litton. It does not really address the issue of precedence between NLRB and arbitration decisions. Thank you very much. Thank you. Thank you to both the Council, Mr. Murphy and Mr. Pass.